**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **BEAU HARBISON,** | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.: 3:26-cv-181 |
| | § | |
| v. | § | |
| | § | |
| **SIG SAUER, INC.,** | § | |
| **SHOOT STRAIGHT, and** | § | |
| **AMERICAN CONCEALMENT** | § | |
| **SOLUTIONS,** | § | |
| | § | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Beau Harbison ("Mr. Harbison" or "Plaintiff") files this Complaint against Defendants Sig Sauer, Inc. ("SIG"), Shoot Straight Apopka ("Shoot Straight"), and American Concealment Solutions ("ACS") (collectively, "Defendants"), and in support thereof, respectfully shows the Court the following:

### I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

2. This Court has personal jurisdiction over each Defendant. Each Defendant has purposefully availed itself of the privilege of conducting activities in the State of Texas by, among other things, distributing, marketing, and/or selling firearms or firearm accessories into Texas, and Mr. Harbison's claims arise out of and relate to those Texas-directed activities. Venue is proper in the United States District Court for the Southern District of Texas, Galveston Division, because a substantial part of the events or omissions giving rise to Mr. Harbison's claims occurred in

Brazoria County, Texas, which lies within the Galveston Division of the Southern District of Texas.

## II. PARTIES

3.      Plaintiff Beau Harbison is an individual residing in Brazoria County, Texas.

4.      Defendant Sig Sauer, Inc. ("SIG") is a Delaware corporation with its principal place of business at 72 Pease Boulevard, Newington, New Hampshire 03801. SIG may be served with process through its registered agent in Texas, Cogency Global Inc., located at 63 Pleasant Street, Concord, NH 03301.

9.      Defendant Shoot Straight Apopka ("Shoot Straight") is, upon information and belief, a federally licensed firearms retailer doing business at 1349 S. Orange Blossom Trail Apopka, FL 32703. Shoot Straight may be served with process at its headquarters, 1349 S. Orange Blossom Trail, Apopka, FL 32703.

10.      Defendant American Concealment Solutions ("ACS") is an Arkansas corporation. ACS may be served with process at its corporate headquarters, 206 S. Fourth St., Van Buren, AR 72956.

## III. GENERAL ALLEGATIONS

11.      On August 16, 2024, Beau Harbison was exiting his vehicle in Lake Jackson, Texas, with his SIG SAUER P365 (the "Subject Handgun") holstered and at his side. Without warning, and without anyone ever pulling the trigger, the Subject Handgun spontaneously discharged. A bullet tore through Mr. Harbison's left leg, leaving a fist-sized cavitation wound, severing his femoral vein, and nearly causing his death. He survived only because eyewitnesses at the scene rendered immediate aid before he was life-flighted to Memorial Hermann Hospital. The injuries he sustained that day are permanent and life-altering.

12.      Mr. Harbison's shooting is not a freak accident. The SIG P365, like the notorious SIG P320, is a striker-fired pistol that lacks adequate safety mechanisms necessary to prevent unintentional discharges. There have been numerous reports of Sig Sauer pistols discharging without a trigger pull. SIG has refused to acknowledge or remedy these defects, despite knowing

that its striker-fired pistols pose an unreasonable risk of catastrophic injury or death to ordinary users.

13.    SIG is a leading designer and manufacturer of firearms. Its products are used by the U.S. military, law enforcement agencies, and hundreds of thousands of civilians throughout the State of Texas and the United States. Despite its popular and commercially successful status, SIG continues to market and sell defective pistols both directly and through retail sellers, including the P365 sold to Mr. Harbison.

14.    SIG's design of the P365 pistol is unreasonably dangerous for its intended uses. The weapon is defective because it can unintentionally discharge when the user did not pull the trigger or, as in this case, when the gun is holstered and the user is not handling the gun at all.

15.    Defendant Shoot Straight Apopka is the federally licensed firearms retailer that sold Mr. Harbison the defective Subject Handgun. Defendant American Concealment Solutions designed, marketed, and sold the holster in which the Subject Handgun was carried at the time of the spontaneous discharge. Neither Defendant warned Mr. Harbison of the well-known and widely reported risk that SIG striker-fired pistols, including the P365, can discharge without the trigger being pulled, nor did they provide adequate safety instructions for carrying the Subject Handgun with a round chambered in the holster they sold.

16.    Mr. Harbison brings this action to recover for the catastrophic, permanent, and life-altering injuries he sustained as a direct and proximate result of Defendants' failures, and to impose accountability for the conduct of a company and its sellers that have continued to put a known defective product into the stream of commerce.

## IV. FACTS

**A.    History of SIG's Striker-Fired Pistol Defects.**

17.    Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

18.     SIG's striker-fired pistols, including the the SIG P365, are designed without an external manual safety. SIG markets these pistols, including the P365, as safe to carry chambered for everyday use, including by ordinary civilians, law enforcement, and military personnel.

19.     The Subject Handgun is defective, including but not limited to, due to the following:

i.      SIG's design lacks an external manual safety capable of preventing unintentional discharges;

ii.     SIG's design lacks adequate internal safety mechanisms capable of preventing unintentional discharges;

iii.    SIG's design lacks adequate redundant safeties or similar devices capable of preventing unintentional discharges;

iv.     SIG's design fails to prevent the movement of internal components that would engage the pistol's firing mechanism unless the trigger is first pulled;

v.      SIG's design fails to use component parts of proper size, dimension, and weight so as to prevent unintentional discharges; and,

vi.     SIG's design otherwise fails to prevent unintentional discharges when the Subject Handgun is carried in a holster with a round chambered, even though SIG markets the Subject Handgun for such use.

**B.     A Defectively Manufactured and Designed SIG P365 Shot Mr. Harbison on August 16, 2024.**

20.     Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

21.     Plaintiff Beau Harbison is 35 years old. He is a husband to his wife Grace and a father of two young children. He is a hardworking individual.

22.     Mr. Harbison purchased the Subject Handgun, a SIG SAUER P365, from Defendant Shoot Straight Apopka in Apopka, Florida. The Subject Handgun was purchased in new condition, came directly from SIG's stream of commerce, and was used by Mr. Harbison only

in its intended manner and for its intended purpose, including lawful personal defense and ordinary carrying.

23.     Mr. Harbison purchased a concealment holster designed for the SIG P365 directly from Defendant American Concealment Solutions via ACS's online sales channel. Upon information and belief, ACS designed, marketed, sold, and shipped the holster (the "Subject Holster") to Mr. Harbison without providing any meaningful instructions or warnings regarding the safe carrying of the Subject Handgun while chambered, regarding the known risk of unintentional discharge of SIG striker-fired pistols, or regarding any features of the Subject Holster that might cause or contribute to such a discharge.

24.     On August 16, 2024, Mr. Harbison was at Aqua Classics Pool Supply in Lake Jackson, Texas. As he exited his vehicle, the Subject Handgun was fully holstered in the Subject Holster, secured at his side. The Subject Handgun was chambered, consistent with SIG's marketing of the P365 as suitable for everyday concealed carry.

25.     Mr. Harbison was not handling the Subject Handgun. He did not touch the trigger. He did not draw, manipulate, or otherwise interact with the Subject Handgun in any way.

26.     Without warning, the Subject Handgun discharged. The round struck Mr. Harbison in his left leg, traveled through his leg, and caused a fist-sized cavitation wound. The bullet severed Mr. Harbison's femoral vein, causing catastrophic and life-threatening blood loss.

27.     Mr. Harbison would have bled to death at the scene but for the immediate intervention of good Samaritans who applied life-saving aid until paramedics arrived.

28.     As a direct and proximate result of the spontaneous discharge of the Subject Handgun, Mr. Harbison has suffered permanent and disabling injuries, required medical treatment, ongoing medical care, pain and suffering, and other damages detailed in this complaint.

## V. CAUSES OF ACTION

### A. Strict Liability – Design Defect (Against SIG as Manufacturer)

29.     Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

30.     SIG is engaged in the business of designing, manufacturing, marketing, advertising, selling, and distributing firearms, including the Subject Handgun.

31.     SIG placed the Subject Handgun on the market through retailers including Defendant Shoot Straight.

32.     SIG's P365 pistols, including the Subject Handgun, are defective and unreasonably dangerous because they function in a manner not reasonably expected by an ordinary consumer of firearms, by discharging without a trigger pull.

33.     The Subject Handgun is defective because SIG designed it in such a manner that allows the firearm to unintentionally discharge. The Subject Handgun is defective in one or more of the ways described above, which Plaintiff re-alleges and incorporates by reference.

34.     At the time the Subject Handgun left SIG's control, there existed safer alternative designs that were both economically and technologically feasible, including but not limited to designs that incorporate an external manual safety, a properly functioning tabbed trigger safety, additional redundant internal safeties, a heavier or properly configured striker and sear assembly, and/or a mechanical disconnector capable of preventing unintentional discharges. These alternative design features would have prevented or significantly reduced the risk of the unintentional discharge that injured Mr. Harbison without substantially impairing the Subject Handgun's utility.

35.     These design defects were a producing cause of Mr. Harbison's injuries and his damages.

**B. Strict Liability – Manufacturing Defect (Against SIG as Manufacturer)**

36.     Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

37.     SIG manufactures P365 pistols, including the Subject Handgun.

38.     The Subject Handgun contained manufacturing defects at the time it left the possession of SIG. More specifically, the Subject Handgun deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous. The

Subject Handgun was dangerous to an extent beyond that which would be contemplated by the ordinary user of the firearm with ordinary knowledge.

39.     The Subject Handgun reached Mr. Harbison without substantial change in its condition.

40.     The Subject Handgun's manufacturing defects were a producing cause of Mr. Harbison's injuries and his damages.

**C. Strict Liability – Marketing Defect (Against SIG as Manufacturer)**

41.     Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

42.     SIG knew, or in the exercise of ordinary care should have known, of the Subject Handgun's propensity to unintentionally discharge without any handling whatsoever or anyone pulling the trigger, yet it failed to notify or warn Mr. Harbison of that propensity, either before or after his purchase of the Subject Handgun.

43.     SIG failed, and continues to fail, to warn Mr. Harbison and the general public of the risks associated with the use and carrying of the P365 pistol, including the Subject Handgun, including the well-documented risk that SIG's striker-fired pistols can discharge while holstered and undisturbed.

44.     Adequate warnings, if given, would have caused Mr. Harbison to take precautions sufficient to prevent the harm he suffered, including, at a minimum, refraining from purchasing or carrying the Subject Handgun chambered in a holster.

45.     SIG's failure to warn and/or inform Mr. Harbison of the risk of unintentional discharges with the P365 pistol, including the Subject Handgun, were a proximate cause of Mr. Harbison's injuries and his damages.

**D. Strict Liability – Design, Manufacturing, and Marketing Defect
 (Against Shoot Straight as Seller)**

46.     Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

47.     Shoot Straight is engaged in the business of distributing or otherwise placing, for commercial purposes, firearms in the stream of commerce for use or consumption, including SIG P365 pistols and the Subject Handgun.

48.     As explained above, the Subject Handgun is defective and unreasonably dangerous because it functions in a manner not reasonably expected by an ordinary consumer. Namely, by discharging without anyone pulling the trigger.

49.     There is a risk of harm inherent in the Subject Handgun arising from its intended or reasonably anticipated use. Namely, that it will discharge without anyone pulling the trigger.

50.     Shoot Straight knew or should have known of the material defects associated with SIG's striker-fired pistols, including the Subject Handgun, at the time it sold the Subject Handgun to Mr. Harbison. Shoot Straight failed to notify or warn Mr. Harbison of those defects, either before or after his purchase of the Subject Handgun.

51.     Shoot Straight also failed to warn Mr. Harbison and the general public of the risks associated with the use and carrying of the Subject Handgun.

52.     Shoot Straight's failure to warn and/or inform Mr. Harbison of the risk of unintentional discharges with the Subject Handgun was a proximate cause of Mr. Harbison's injuries and his damages.

**E. Strict Liability – Design, Manufacturing, and Marketing Defect**
**(Against American Concealment Solutions)**

53.     Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

54.     ACS is engaged in the business of designing, manufacturing, marketing, selling, and distributing firearm holsters, including the Subject Holster, directly to consumers through internet sales channels and into the State of Texas.

55.     Upon information and belief, the Subject Holster was defectively designed, defectively manufactured, and/or defectively marketed in one or more of the following ways: (i) the Subject Holster failed to provide adequate protection of the Subject Handgun's trigger and trigger guard during ordinary carrying and movement; (ii) the Subject Holster's material,

construction, or fit permitted contact with, deformation of, or pressure on the Subject Handgun's trigger or fire-control components during reasonably foreseeable use; and/or (iii) the Subject Holster lacked adequate instructions or warnings regarding its proper use with SIG striker-fired pistols, including the P365, and regarding the well-documented risk of unintentional discharges of such pistols, including while holstered.

56.    There existed safer alternative designs for the Subject Holster that were economically and technologically feasible at the time of sale and that would have prevented or substantially reduced the risk of the harm Mr. Harbison suffered.

57.    ACS knew, or in the exercise of ordinary care should have known, of the Subject Holster's defects and the known propensity of the P365, to discharge without a trigger pull. ACS sold and shipped the Subject Holster to Mr. Harbison without providing adequate instructions, warnings, or safety information.

58.    The Subject Holster reached Mr. Harbison without substantial change in its condition.

59.    ACS's defects in design, manufacturing, and/or marketing of the Subject Holster were a producing cause of Mr. Harbison's injuries and his damages.

**F. Negligence and Gross Negligence (Against All Defendants)**

60.    Mr. Harbison incorporates the preceding paragraphs as if fully set forth herein.

61.    Defendants knew, or in the exercise of ordinary care, should have known, that the Subject Handgun would be used and carried in the manner it was on the day and at the time when it spontaneously discharged, while holstered, and severely injured Mr. Harbison.

62.    Accordingly, it was foreseeable that ordinary users of the Subject Handgun, including consumers like Mr. Harbison, would be harmed by the unreasonably dangerous conditions present within the Subject Handgun and the Subject Holster, as outlined herein. It was also foreseeable that bystanders near the Subject Handgun would be catastrophically injured or killed by any unintentional discharge when it is holstered and carried. Such discharge was foreseeable to Defendants.

63.     SIG knowingly misled the general public and hundreds of thousands of end users, including Mr. Harbison, and it continues to do so. SIG misrepresented information to consumers or omitted critical facts known to SIG.

64.     Shoot Straight and ACS further promoted SIG's misleading marketing campaign and/or failed to adequately warn the public of the known risks associated with the P365. Ultimately, Defendants' misleading marketing and failure to warn discouraged end users like Mr. Harbison from searching out and/or selecting safer alternatives to the P365 pistol.

65.     Defendants had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings and instructions for, package, distribute, and/or sell the Subject Handgun and Subject Holster in a reasonably safe condition so as not to present a danger to end users—including Mr. Harbison—and to bystanders for whom it was reasonably foreseeable would come into contact with the Subject Handgun or Subject Holster under ordinary circumstances.

58.     SIG breached its duties to Mr. Harbison in one or more of the following ways:

a.      Designing the Subject Handgun in such an unreasonably dangerous and defective manner as to permit it to unintentionally discharge, including through the design defects identified above;

b.      Manufacturing the Subject Handgun in such an unreasonably dangerous and defective manner as to permit it to unintentionally discharge;

c.      Failing to recall the Subject Handgun as defectively designed or, alternatively, to warn of the same;

d.      Failing to design and manufacture the Subject Handgun in such a way as to restrict, limit, or prevent the possibility of unintentional discharges of the Subject Handgun;

e.      Failing to make reasonable tests and inspections to discover the defective and unreasonably dangerous conditions relating to the Subject Handgun's propensity to discharge un-commanded; and,

f.  Failing to unambiguously and conspicuously warn purchasers and end users of the Subject Handgun, including Mr. Harbison, of the defective, hazardous, and unreasonably dangerous conditions relating to its design, manufacture, and marketing.

66. Shoot Straight breached its duties to Mr. Harbison in one or more of the following ways:

a.  Selling the Subject Handgun in such an unreasonably dangerous and defective manner as to permit it to unintentionally discharge;

b.  Making the Subject Handgun available to the general public, including Mr. Harbison, without adequate warning of the unreasonably dangerous and defective nature of the Subject Handgun; and,

c.  Marketing, promoting, advertising, and representing to the general public, including Mr. Harbison, that the Subject Handgun was reasonably safe for ordinary use, carrying, handling, movement, and holstering when, in reality, basic and reasonably foreseeable use caused the Subject Handgun to unintentionally discharge.

67. ACS breached its duties to Mr. Harbison in one or more of the following ways:

a.  Designing, manufacturing, and selling the Subject Holster in a manner that failed to adequately protect the Subject Handgun's trigger and trigger guard during ordinary, foreseeable carry;

b.  Failing to test, inspect, and design the Subject Holster to ensure that it would not contribute to or fail to prevent unintentional discharges of SIG striker-fired pistols, including the Subject Handgun;

c.  Failing to provide adequate instructions, warnings, or safety information accompanying the Subject Holster, including warnings concerning the well-documented risk of unintentional discharges of SIG striker-fired pistols, including the P365, while holstered; and,

d.    Marketing, promoting, advertising, and selling the Subject Holster to consumers, including Mr. Harbison, without adequately warning them of the risks associated with carrying SIG striker-fired pistols, chambered, in the Subject Holster.

68.    Defendants' above-referenced breaches directly and proximately caused the injuries suffered by Mr. Harbison.

69.    As a direct and proximate result of Defendants' negligence, Mr. Harbison was injured and suffered, inter alia: permanent injury, disability, disfigurement, scarring, pain and suffering, aggravation of preexisting conditions, loss of past wages, loss of future earning capacity, mental anguish, loss of enjoyment of life, and medical expenses in the care and treatment of said injuries.

70.    Defendants' above-referenced acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others of being shot by a firearm, including the probability of harm to end users such as Mr. Harbison and to bystanders. Defendants had actual subjective awareness of this risk but nevertheless proceeded with the design, manufacture, sale, and distribution of fatally defective firearms and accessories into the stream of commerce with conscious indifference to the rights, safety, and welfare of others.

### VI. ACTUAL & EXEMPLARY DAMAGES

71.    Mr. Harbison incorporates by reference the preceding factual allegations.

72.    Defendants are jointly and severally liable to Mr. Harbison for actual and exemplary damages. Mr. Harbison's actual damages include, but are not limited to:

Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiffs for the necessary care and treatment of the injuries resulting from the incident complained of herein and such charges are reasonable and were usual and customary charges for such services;

b. Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

c. Physical pain and suffering in the past;

d. Physical pain and suffering in the future;

e. Physical impairment in the past;

f. Physical impairment, which in all reasonable probability, will be suffered in the future;

g. Loss of earnings in the past;

h. Loss of earning capacity, which will in all probability, be incurred in the future;

i. Loss of household services in the past;

j. Loss of household services in the future;

k. Mental anguish in the past;

l. Mental anguish in the future;

m. Fear of future disease or condition;

n. Cost of medical monitoring and prevention in the future;

o. Attorney's fees and expenses;

p. Costs and interest;

q. Exemplary damages; and

r. Any and all other damages to which Plaintiff shows entitlement in law or equity through the course of this proceeding.

73.     Mr. Harbison is entitled to an award of exemplary damages against Defendants because they were grossly negligent. Defendants' acts or omissions, when viewed objectively from Defendants' standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

### VII. JURY DEMAND

74.     Pursuant to the Federal Rules of Civil Procedure, Mr. Harbison hereby demands a trial by jury on all issues so triable.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Beau Harbison respectfully requests that, upon final trial, he recover a judgment against Defendants, jointly and severally, for actual and exemplary damages, pre-judgment and post-judgment interest at the maximum lawful rate, costs of court, and all such other and further relief, at law or in equity, to which Mr. Harbison is justly entitled.

Respectfully submitted,

**WILLIAMS HART & BOUNDAS, LLP**

By: */s/ Cesar Tavares*
Cesar Tavares
State Bar No. 24093726
Alma J. Reyes
State Bar No. 24064392
Alejandro Salicrup
State Bar No. 24138723
8441 Gulf Frwy, Suite 600
Houston, Texas 77017-5001
Telephone: (713) 230-2200
Facsimile: (713) 643-6226
TavaresLitTeam@whlaw.com

THE RICE LAW FIRM

ROBERT T. RICE
State Bar No. 16835200
116 South Velasco Street, Suite D
Angleton, TX  77515
Telephone: (979) 864-3000
Fax: (979) 849-1124
Email: **robert@ricelawoffice.com**
Email **: attorneyrice@aol.com**
E-Service: **eservice@ricelawoffice.com**

**ATTORNEYS FOR PLAINTIFF**