United States District Court
Southern District of Texas
**ENTERED**
October 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| BEAU HARBISON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00181 |
| | § | |
| SIG SAUER, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a motion to dismiss for lack of personal jurisdiction filed by Defendant Shoot Straight, Inc.[1] *See* Dkt. 13. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be denied without prejudice to re-urging following very limited jurisdictional discovery.

## BACKGROUND

Plaintiff Beau Harbison is the owner of a P365 handgun manufactured by Defendant SIG Sauer, Inc. Harbison purchased his P365 in Florida on May 2, 2023, from a Shoot Straight retail location in Apopka, Florida. According to the identification that Harbison provided in connection with his purchase of the P365, Harbison resided in Florida when he purchased the P365.

On August 16, 2024, while exiting his vehicle in Lake Jackson, Texas, Harbison's P365 discharged, striking his left leg and severing his femoral vein. He claims that the P365 discharged despite being holstered in a concealment holster designed for the P365 and manufactured by Defendant American Concealment Solutions ("ACS"). Harbison survived and now brings this product liability action against SIG, Shoot Straight, and ACS.

Shoot Straight has moved to dismiss arguing that it is not subject to personal jurisdiction in Texas.

[1] Shoot Straight is misidentified in Plaintiff's complaint as Shoot Straight Apopka.

**PERSONAL JURISDICTION**

Federal Rule of Civil Procedure 12(b)(2) allows a party to challenge the district court's exercise of personal jurisdiction. The United States Supreme Court has recognized two types of personal jurisdiction: general jurisdiction[2] and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). Harbison asserts only specific jurisdiction as to Shoot Straight. Specific jurisdiction demands a connection between the incident in question and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). This inquiry is fact-intensive, and its touchstone is "whether the defendant's conduct shows that it reasonably anticipates being haled into" a Texas court. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quotation omitted). Defendants "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation modified).

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (quotation omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation omitted). Specific jurisdiction is proper when the plaintiffs allege a cause of action that arises out of or relates to a contact between the defendant and the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

The Fifth Circuit has held that specific personal jurisdiction exists only when three conditions are met: (1) "the defendant must purposefully avail itself of the

[2] General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Harbison does not contend on the present record that Shoot Straight is subject to general jurisdiction in Texas. *See* Dkt. 14 at 14.

privilege of conducting activities in the forum State," (2) "the plaintiff's claim must arise out of or relate to those purposeful contacts," and (3) exercising jurisdiction must be "fair and reasonable to the defendant." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021) (cleaned up). "Specific jurisdiction should be determined on a case-by-case basis under the facts of each individual case." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x. 285, 293 (5th Cir. 2020).

When a district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, as is the case here, "the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "To determine whether the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (cleaned up). The district court must accept all jurisdictional allegations as true and resolve factual disputes in favor of the plaintiffs. *See Sangha*, 882 F.3d at 101. But the court need not credit conclusory allegations, even if uncontroverted. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). If plaintiff makes a prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

## ANALYSIS

### A. HARBISON HAS NOT ESTABLISHED A PRIMA FACIE CASE OF PERSONAL JURISDICTION

Because Harbison bears the burden of establishing a prima facie case of personal jurisdiction, I will first review Harbison's jurisdictional allegations. In the jurisdiction section of his complaint, Harbison advances a single, general allegation against all Defendants collectively: "Each Defendant has purposefully availed itself of the privilege of conducting activities in the State of Texas by, among

other things, distributing, marketing, and/or selling firearms or firearm accessories into Texas, and Mr. Harbison's claims arise out of and relate to those Texas-directed activities." Dkt. 1 at 1. Personal jurisdiction is a defendant-specific, claim-specific inquiry. A single sentence that lumps all Defendants together and then phrases their activities in the conjunctive and disjunctive ("and/or") leaves me to wonder whether Shoot Straight distributed *and* marketed *and* sold firearms *and* firearm accessories into Texas, whether Shoot Straight only *marketed* firearms in Texas, whether Shoot Straight only *sold* firearms in Texas, whether Shoot Straight only sold firearm *accessories* into Texas, or something else. In short, Harbison's jurisdictional allegations about Defendants lack the specificity required to show *Shoot Straight's* contacts with Texas.

As to Shoot Straight specifically, Harbison alleges: "Shoot Straight is engaged in the business of distributing or otherwise placing, for commercial purposes, firearms in the stream of commerce for use or consumption, including SIG P365 pistols and the Subject Handgun." *Id.* at 8. That one sentence is the only jurisdictional allegation that Harbison alleges against Shoot Straight specifically. But to say that Shoot Straight places firearms in the stream of commerce tells me nothing about Shoot Straight's contacts *with Texas*. Thus, Harbison has not carried his burden to establish a prima facie case of personal jurisdiction.

Harbison laments the "carefully bounded denials" in the sworn declaration of Shoot Straight's Commercial Operations Manager, Alexi Scalco, and the fact that Scalco's declaration "does not controvert [Harbison]'s allegation that Shoot Straight *sells* into Texas." *See* Dkt. 14 at 9, 12. But Harbison made no such allegation; Harbison never directly alleges that Shoot Straight sells firearms into Texas. Harbison alleges only that: "Each Defendant has purposefully availed itself of the privilege of conducting activities in the State of Texas by, among other things, distributing, marketing, and/or selling firearms or firearm accessories into Texas." Dkt. 1 at 1. Without more specific factual allegations, I cannot know if Harbison is alleging that all three defendants do all three things in Texas with

regards to firearms *and* firearm accessories or something else. Again, Harbison's generalized allegation about Defendants tells me nothing about *Shoot Straight's* contacts with Texas.

I must address the parties' mutual reliance on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). In *Ford*, the Supreme Court held that Ford was subject to specific personal jurisdiction in Minnesota and Montana in personal injury actions even though neither plaintiff could show that the exact Ford automobile that allegedly gave rise to their injuries was designed, manufactured, or sold in the state in which each plaintiff was injured. The Supreme Court said that Ford was nevertheless subject to specific personal jurisdiction because "it does substantial business in Montana and Minnesota" and "actively seeks to serve the market for automobiles and related products in those States." *Id.* at 361. Specifically, the Supreme Court noted that Ford advertised both models at issue, whether new or used, in Montana and Minnesota; that Ford's dealers in Montana and Minnesota serviced both models of cars at issue; and that Ford distributed replacement parts for both models at issue in both states. *Id.* at 365.

Harbison contends that "[t]he facts of *Ford* are the facts of this case in miniature." Dkt. 14 at 13. The *relationship* between the facts of this case and the facts of *Ford* is indeed miniature. Harbison's two scant allegations—one of which is not even specific to Shoot Straight—do not show that Shoot Straight "served a market in [Texas] for the very [firearm] that [Harbison] allege[s] malfunctioned and injured [him] in [Texas]." *Ford*, 592 U.S. at 365. Thus, under *Ford*, Shoot Straight is not subject to personal jurisdiction in Texas. Having dispensed with the only two jurisdictional allegations that Harbison asserts against Shoot Straight, I must conclude that Harbison has not established that Shoot Straight is subject to specific personal jurisdiction in Texas. Before recommending dismissal of Shoot Straight for lack of personal jurisdiction, however, I must address Harbison's request for jurisdictional discovery.

## B. SOME JURISDICTIONAL DISCOVERY IS WARRANTED

Harbison has not established a prima facie case of specific personal jurisdiction. He does not allege with sufficient specificity that Shoot Straight served a Texas market for P365s, SIG handguns generally, or even firearms generally. Ordinarily, that deficiency would warrant dismissal. But the inquiry does not necessarily end there. The Fifth Circuit recognizes that a plaintiff who has not yet made a prima facie showing may nevertheless be entitled to jurisdictional discovery when such discovery could produce the evidence necessary to make that showing.

In *Wyatt v. Kaplan*, the Fifth Circuit found persuasive plaintiff's arguments that "[e]ven if he did not make a prima facie case on the question of personal jurisdiction, . . . discovery might have produced the necessary prima facie evidence," and "[i]t is unfair and illogical . . . to require that he shoulder the burden of coming forward with evidence of jurisdiction while denying him the opportunity to develop that evidence." 686 F.2d 276, 283 (5th Cir. 1982). The Fifth Circuit held, however, that Wyatt was properly denied jurisdictional discovery because the facts that he sought to uncover would not have changed the jurisdictional analysis. *See id.* at 285. Thus, the question now becomes whether Harbison seeks to uncover jurisdictional facts that would change the analysis.

Harbison "requests leave to serve narrowly tailored written discovery and to take one deposition under Rule 30(b)(6)." Dkt. 14 at 16. Specifically, Harbison seeks jurisdictional discovery as to:

> (1) Texas sales and shipments. The volume, revenue, and identity of Shoot Straight's sales of firearms, ammunition, accessories, holsters, parts, and merchandise to Texas customers or Texas addresses, and any shipments to Texas federal firearms licensees, from January 1, 2021 to the present. Why it matters: this is the fact on which purposeful availment turns and the fact the Declaration never addresses.
>
> (2) E-commerce operations. The structure of Shoot Straight's online sales channel, the states to which it ships, whether Texas is excluded, its order-fulfillment records for Texas destinations, and its website

> analytics reflecting Texas traffic. Why it matters: ¶ 16 asserts the website is "accessible from anywhere" without disclosing whether Texas is a market it in fact serves.
>
> (3) Communications with Plaintiff. All communications between Shoot Straight and Mr. Harbison after May 6, 2023, including marketing, loyalty-program, and product-notice communications, together with the contact and address information Shoot Straight maintained for him. Why it matters: ¶ 15's "as a class" qualifier leaves this open, and it bears directly on the post-sale failure-to-warn claim pleaded at ¶ 50.
>
> (4) Unpaid and organic Texas marketing. Search-engine optimization, social-media presence and follower geography, e-mail distribution lists, and any advertising not "purchased or placed" with geographic targeting. Why it matters: ¶¶ 14 and 16 deny only paid, geographically targeted advertising in enumerated legacy media.
>
> (5) Post-sale safety communications. Any communications Shoot Straight sent to customers concerning unintentional discharges, safety notices, recalls, or upgrades affecting SIG striker-fired pistols, and the geographic distribution of those communications. Why it matters: it establishes both the existence of a post-sale duty channel and whether that channel reached Texas.
>
> (6) The SIG relationship. Shoot Straight's dealer, distribution, or marketing agreements with SIG Sauer, including any territory provisions or cooperative advertising, and any acknowledgment that products sold would be used interstate. Why it matters: it bears on whether Shoot Straight participated in a distribution scheme contemplating Texas use.
>
> (7) The transaction records. The ATF Form 4473 and associated point-of-sale records for the Subject Firearm, and any Shoot Straight record reflecting an address for Mr. Harbison. Why it matters: ¶ 20 recites what "the identification provided" showed rather than affirming the underlying fact, and ¶ 22 speaks only to knowledge "at the time of the sale."
>
> (8) The declarant. The basis for Scalco's statements, the searches undertaken, and the identity of any other person whose "knowledge, information and belief" the Declaration incorporates.

*Id.* at 16–18.

As the party opposing dismissal and requesting discovery, "[Harbison] bear[s] the burden of demonstrating the necessity of discovery." *Monkton Ins.*

*Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (quotation omitted). Harbison's characterization of his requested discovery as "narrowly tailored" is difficult to square with the breadth of several categories. Dkt. 14 at 16. For example, Harbison requests discovery about his own firearm purchase and the identification that he provided when he made that purchase. If Harbison disputes that he purchased his P365 in Florida while a Florida resident, then Harbison could and should have alleged as much in his complaint. Likewise, Harbison's request for discovery into "the states to which [Shoot Straight] ships" is impermissibly broad, as the only state that matters to this litigation is Texas. *Id.* at 17. Nor is Harbison's request for discovery about "ammunition, accessories, holsters, parts, and merchandise to Texas customers or Texas addresses" relevant to the personal jurisdiction analysis. *Id.* at 16. The "essential foundation of specific jurisdiction" is "a strong relationship among the defendant, the forum, *and the litigation*." *Ford Motor Co.*, 592 U.S. at 353 (emphasis added) (quotation omitted). Accordingly, it does not matter if Shoot Straight sold firearm accessories or ammunition to Texas because that is not the basis of Harbison's claims against Shoot Straight.

The Fifth Circuit has said that "a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). Here, although Harbison's requested jurisdictional discovery is impermissibly broad, the record—specifically, Scalco's declaration—suggests that some truly narrow jurisdictional discovery will produce the facts needed to withstand a Rule 12(b)(1) motion. Through Scalco's declaration, Shoot Straight voluntarily denies many facts that might pertain to personal jurisdiction without denying the one fact that matters: whether Shoot Straight serves a market for firearms in Texas. *See* Dkt. 13-1. Accordingly, Harbison should be permitted to seek limited jurisdictional discovery from Shoot Straight regarding whether it served a market for firearms in Texas at any time from January 1, 2021, through August 16, 2024, the date of Harbison's injury. *See Harlow v. Child.'s*

*Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005) (When "analyzing specific jurisdiction, contacts must generally be limited to those before and surrounding the accrual of the cause of action.").

Specifically, I recommend that Harbison be given 15 days from the date this recommendation is adopted to send targeted jurisdictional discovery requests to Shoot Straight pertaining solely to whether Shoot Straight served a market for firearms in Texas at any time from January 1, 2021, through August 16, 2024. Additionally, Harbison should be permitted to depose a Rule 30(b)(6) corporate representative from Shoot Straight. The parties have 15 days from the date this recommendation is adopted to confer on topics for the Rule 30(b)(6) deposition. If the parties disagree as to the scope of Harbison's discovery requests or the topics for the Rule 30(b)(6) deposition, the parties should follow Galveston Division Rule of Practice 7 and submit a *joint* discovery dispute letter to the court. Harbison would do well to remember that jurisdictional discovery is *not* merits discovery.

## CONCLUSION

For the reasons discussed above, I recommend that Shoot Straight's motion to dismiss for lack of personal jurisdiction (Dkt. 13) be denied without prejudice to re-urging following limited jurisdictional discovery pertaining to whether Shoot Straight served a market for firearms in Texas at any time from January 1, 2021, through August 16, 2024, the date of Harbison's injury.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 5th day of October 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE