IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BEAU HARBISON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:26-cv-00181 |
| | § | |
| SIG SAUER, INC., SHOOT STRAIGHT, and AMERICAN CONCEALMENT SOLUTIONS, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT AMERICAN CONCEALMENT SOLUTIONS, LLC'S RULE 12(b)(5) MOTION TO DISMISS AND RULE 12(b)(6) PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

NATURE AND STAGE OF THE PROCEEDING ........ 1

ISSUES PRESENTED ........ 2

SUMMARY OF THE ARGUMENT ........ 2

BACKGROUND ........ 4

A. Plaintiff alleges that his SIG pistol fired while holstered and untouched. ........ 4

B. Plaintiff's allegations against ACS. ........ 5

C. Procedural history and service on ACS. ........ 6

LEGAL STANDARDS ........ 7

A. Rule 12(b)(5) and Rule 4(m). ........ 7

B. Rule 12(b)(6). ........ 8

ARGUMENT ........ 9

A. The claims against ACS should be dismissed under Rules 12(b)(5) and 4(m) because Plaintiff did not timely serve ACS. ........ 9

B. Plaintiff fails to state a marketing-defect or negligent-warning claim against ACS. ........ 10

1. ACS had no duty to warn about an alleged defect in SIG's pistol or to instruct on how to carry it. ........ 11

2. Plaintiff pleads no facts supporting a warning claim about the holster itself. ........ 13

3. Plaintiff's "misleading marketing campaign" allegation includes no well-pleaded facts as to ACS. ........ 15

C. Plaintiff fails to state a manufacturing-defect claim against ACS. ........ 15

D. Plaintiff fails to state a claim for gross negligence or exemplary damages against ACS. ........ 18

CONCLUSION AND PRAYER .................... 21

CERTIFICATE OF SERVICE .................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 13, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8, 13, 19

*Callier v. Nat'l United Grp., LLC*,
No. EP-21-CV-71-DB, 2021 WL 5393829 (W.D. Tex. Nov. 17, 2021) .......... 8, 15

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
770 F.3d 322 (5th Cir. 2014) .......... 3, 16, 17

*Cofresi v. Medtronic, Inc.*,
450 F. Supp. 3d 759 (W.D. Tex. 2020) .......... 16

*Cooper Tire & Rubber Co. v. Mendez*,
204 S.W.3d 797 (Tex. 2006) .......... 3, 16

*Firestone Steel Prods. Co. v. Barajas*,
927 S.W.2d 608 (Tex. 1996) .......... 3, 11, 12

*Ford Motor Co. v. Ledesma*,
242 S.W.3d 32 (Tex. 2007) .......... 16

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) .......... 16

*Greater Hous. Transp. Co. v. Phillips*,
801 S.W.2d 523 (Tex. 1990) .......... 10

*Hernandez v. Safariland, LLC*,
824 F. Supp. 3d 581 (W.D. Tex. 2026) .......... passim

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
892 F.3d 719 (5th Cir. 2018) .......... 8, 17

*Johnson v. Jones-Blair Paint Co.*,
607 S.W.2d 305 (Tex. Civ. App.–Eastland 1980, writ ref'd n.r.e.) .......... 11

*Martinez v. City of N. Richland Hills*,
846 F. App'x 238 (5th Cir. 2021) (per curiam) ........ 9, 15

*Millan v. USAA Gen. Indem. Co.*,
546 F.3d 321 (5th Cir. 2008) ........ 7

*Orrson v. Sig Sauer, Inc.*,
No. H-25-1776, 2026 WL 494129 (S.D. Tex. Feb. 23, 2026) ........ 12, 14, 17, 20

*Ranger Conveying & Supply Co. v. Davis*,
254 S.W.3d 471 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) ........ 11

*Systems Signs Supplies v. U.S. Dep't of Justice*,
903 F.2d 1011 (5th Cir. 1990) ........ 7

*Thrasher v. City of Amarillo*,
709 F.3d 509 (5th Cir. 2013) ........ 7, 9, 10

*Walton v. Harnischfeger*,
796 S.W.2d 225 (Tex. App.–San Antonio 1990, writ denied) ........ 11

*Williams v. Gen. Binding Corp.*,
No. 3:23-CV-00850-K, 2024 WL 628850 (N.D. Tex. Feb. 14, 2024) ........ 16, 19

**Statutes**

Tex. Civ. Prac. & Rem. Code § 41.001 ........ 18, 19

Tex. Civ. Prac. & Rem. Code § 41.003 ........ 18, 21

Tex. Civ. Prac. & Rem. Code § 41.006 ........ 18, 19, 21

**Rules**

Fed. R. Civ. P. 12(b)(5) ........ 1, 2, 7, 10

Fed. R. Civ. P. 12(b)(6) ........ 1, 8

Fed. R. Civ. P. 4(m) ........ passim

Fed. R. Civ. P. 6(a) ........ 6, 9

Defendant American Concealment Solutions, LLC ("ACS")[1] moves to dismiss Plaintiff Beau Harbison's claims against it under Federal Rules of Civil Procedure 12(b)(5) and 4(m) because Plaintiff did not serve ACS within the time Rule 4(m) allows. Alternatively, ACS moves under Rule 12(b)(6) to dismiss Plaintiff's claims for strict-liability marketing defect, negligent failure to warn or instruct, strict-liability manufacturing defect, negligent manufacturing, and gross negligence, together with the request for exemplary damages. This motion does not ask the Court to decide, on the pleadings, Plaintiff's design-defect theory against ACS.

**NATURE AND STAGE OF THE PROCEEDING**

Plaintiff filed this product-liability action on June 8, 2026 against SIG Sauer, Inc. ("SIG"), Shoot Straight, and ACS. Dkt. 1. He alleges that his SIG P365 pistol discharged while holstered at his side, causing serious injury. *Id.* ¶¶ 11, 24–26. The Court referred pretrial matters to Magistrate Judge Andrew M. Edison. Dkt. 5. SIG's motion to strike and to dismiss, which challenges the claims asserted against SIG, is fully briefed and remains pending. Dkts. 7, 12, 15, 17. On October 5, 2026, Judge Edison recommended that Shoot Straight's Rule 12(b)(2) motion be denied without prejudice to re-urging after limited jurisdictional

[1] Plaintiff sued "American Concealment Solutions" and alleges that it is "an Arkansas corporation." Dkt. 1 ¶ 10. The correct defendant is American Concealment Solutions, LLC, an Ohio limited liability company.

discovery. Dkt. 26. ACS was served on October 4, 2026, 118 days after Plaintiff filed suit. Ex. A ¶ 3. This motion is ACS's first response to the complaint.

## ISSUES PRESENTED

1. Whether Plaintiff's claims against ACS should be dismissed under Rules 12(b)(5) and 4(m), because Plaintiff did not serve ACS within 90 days after filing suit and cannot show good cause for the delay.

2. Whether Plaintiff fails to state a plausible marketing-defect or negligent failure-to-warn claim against ACS, when the warnings he says were missing concern an alleged defect in SIG's pistol, a product ACS did not design, make, or sell, and when his allegations about the holster itself describe only a design theory and identify no hazard that a warning would have addressed.

3. Whether Plaintiff fails to state a manufacturing-defect claim against ACS, when he recites the elements without identifying any specification, any deviation from it, or any way in which the holster he possesses departed from ACS's planned output.

4. Whether Plaintiff fails to state a claim for gross negligence and exemplary damages against ACS, when he merely recites the statutory elements against "Defendants" collectively and alleges no fact about what ACS knew.

## SUMMARY OF THE ARGUMENT

***Service.*** Rule 4(m) required Plaintiff to serve ACS by September 8, 2026. On that date, Plaintiff told the Court that ACS had not been served. He did not seek more time. ACS was not served until October 4, 2026, almost four weeks

after the deadline had expired. Plaintiff bears the burden of showing good cause, and nothing in the record supplies it.

***Marketing defect.*** Plaintiff's warning theory against ACS rests principally on the premise that a holster maker had to warn buyers that SIG's pistol could fire without a trigger pull. Texas law imposes no such duty. "A manufacturer does not have a duty to warn or instruct about another manufacturer's products[.]" *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 616 (Tex. 1996) (citation omitted). What remains of the warning theory is a single "and/or" clause about unidentified holster "features" that "might" contribute to a discharge. That clause pleads no hazard, no knowledge, and no causation. And Plaintiff's holster-specific allegations describe a design theory, not a warning theory. A warning claim against a holster maker fails where, as here, the plaintiff never alleges that the holster was safe as designed but made unreasonably dangerous by the lack of a warning. *Hernandez v. Safariland, LLC*, 824 F. Supp. 3d 581, 594–95 (W.D. Tex. 2026).

***Manufacturing defect.*** Texas law requires a manufacturing defect to involve a deviation from the product's specifications or planned output in a manner that renders it unreasonably dangerous. *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). But Plaintiff merely recites the words "defectively manufactured" and nothing more. He identifies no specification and no deviation. The two "defects" he lists criticize the holster's design, which he

suggests may have permitted contact with or pressure on the trigger or fire-control components. Those allegations do not explain how the holster deviated from its intended output or identify a unit-specific manufacturing departure.

***Gross negligence.*** Plaintiff tracks the statutory definition of gross negligence word for word and attributes it to "Defendants" as a group. Every fact he pleads about prior incidents and knowledge concerns SIG. He pleads zero facts about what ACS supposedly knew, when, or how. Judge Edison has already declined to credit this kind of collective, "and/or" pleading in this case. Dkt. 26 at 3–5.

## BACKGROUND

### A. Plaintiff alleges that his SIG pistol fired while holstered and untouched.

Plaintiff alleges that on August 16, 2024, as he got out of his vehicle in Lake Jackson, Texas, his SIG P365 "spontaneously discharged" while "fully holstered" at his side. Dkt. 1 ¶¶ 11, 24. "He did not touch the trigger. He did not draw, manipulate, or otherwise interact with the Subject Handgun in any way." *Id.* ¶ 25.

Plaintiff attributes the discharge to the pistol,  alleging that the P365 "lacks adequate safety mechanisms necessary to prevent unintentional discharges" and "is defective because it can unintentionally discharge when the user did not pull the trigger or, as in this case, when the gun is holstered and the user is not handling the gun at all." *Id.* ¶¶ 12, 14. Each defect he lists is a feature of "SIG's design," internal to the pistol. *Id.* ¶ 19. Every allegation of prior incidents and notice concerns SIG, including "numerous reports of Sig Sauer pistols

discharging without a trigger pull," which "SIG has refused to acknowledge or remedy." *Id.* ¶ 12; *see id.* ¶¶ 42–43, 63.

### B. Plaintiff's allegations against ACS.

Plaintiff alleges that he bought "a concealment holster designed for the SIG P365 directly from [ACS] via ACS's online sales channel." *Id.* ¶ 23. Count E asserts strict liability against ACS for "Design, Manufacturing, and Marketing Defect" in a single count. *Id.* at 8; *id.* ¶¶ 53–59. Its central allegation, made "[u]pon information and belief," is that the holster was "defectively designed, defectively manufactured, and/or defectively marketed in one or more of the following ways":

> (i) the Subject Holster failed to provide adequate protection of the Subject Handgun's trigger and trigger guard during ordinary carrying and movement; (ii) the Subject Holster's material, construction, or fit permitted contact with, deformation of, or pressure on the Subject Handgun's trigger or fire-control components during reasonably foreseeable use; and/or (iii) the Subject Holster lacked adequate instructions or warnings regarding its proper use with SIG striker-fired pistols, including the P365, and regarding the well-documented risk of unintentional discharges of such pistols, including while holstered.

*Id.* ¶ 55. Plaintiff alleges that ACS "knew, or in the exercise of ordinary care should have known, of the Subject Holster's defects and the known propensity of the P365, to discharge without a trigger pull." *Id.* ¶ 57. He alleges that ACS gave no warnings "regarding the known risk of unintentional discharge of SIG striker-fired pistols" and no instructions on "the safe carrying of the Subject Handgun while chambered." *Id.* ¶¶ 15, 23.

Count F, which is pleaded against all Defendants, restates these theories as negligence. *Id.* ¶ 67(a)–(d). It also alleges that "Shoot Straight and ACS further promoted SIG's misleading marketing campaign and/or failed to adequately warn the public of the known risks associated with the P365." *Id.* ¶ 64. Plaintiff's gross-negligence allegations are made only against "Defendants" as a group. He alleges that "Defendants had actual subjective awareness" of an extreme risk "but nevertheless proceeded with the design, manufacture, sale, and distribution of fatally defective firearms and accessories." *Id.* ¶ 70; *see id.* ¶ 73. On that basis he seeks exemplary damages from all Defendants "jointly and severally." *Id.* ¶ 72(q).

The Complaint does not allege that the holster cracked, deformed, loosened, or departed from ACS's intended specifications. It does not identify any part of the holster that actually contacted the trigger. It does not contend that anything entered the trigger guard. Plaintiff's only allegation about what a warning would have changed concerns SIG's warnings. *Id.* ¶ 44.[2]

### C. Procedural history and service on ACS.

The Clerk issued a summons to ACS at an Arkansas address on June 9, 2026. Dkt. 4; *see* Dkt. 6. The Rule 4(m) service period expired on September 8, 2026.[3] That same day, Plaintiff moved to continue the initial conference, telling

---

[2] Paragraph 44 appears in Count C, which is pleaded against SIG alone. Dkt. 1 at 7 (Count C heading).

[3] The 90th day after June 8, 2026 was Sunday, September 6, and Monday, September 7 was Labor Day, a legal holiday. The period therefore ran through Tuesday, September 8, 2026. *See* Fed. R. Civ. P. 6(a)(1)(C), (a)(6)(A).

the Court that "the docket does not reflect that ACS has been served" and that ACS, "upon information and belief, has not been served." Dkt. 20 at 2, 4. Plaintiff did not ask the Court to extend his time to serve ACS. ACS was served almost a month later, on October 4, 2026. Ex. A ¶ 3.

## LEGAL STANDARDS

### A. Rule 12(b)(5) and Rule 4(m).

Rule 12(b)(5) permits a challenge to the sufficiency of service, including timeliness. Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The court must extend the time "if the plaintiff shows good cause for the failure." *Id.* "When service of process is challenged, the serving party bears the burden of proving ... good cause for failure to effect timely service." *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (quoting *Systems Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990)). Good cause requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* (citation omitted). Absent good cause, any extension lies within the Court's discretion. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008).

**B. Rule 12(b)(6).**

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court accepts well-pleaded facts as true, but it does not accept legal conclusions couched as facts. *Iqbal*, 556 U.S. at 678.

Allegations made "upon information and belief" are permitted where the facts are "'peculiarly within the possession and control of the defendant'" or where "'the belief is based on factual information that makes the inference of culpability plausible.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). But that is "no license to fish"—a plaintiff must be diligent in pleading factual information. *Id.* Furthermore, because liability is assessed defendant by defendant, group pleaded allegations ("and/or") do not show what any one defendant did. *See, e.g., Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021); *see also* Dkt. 26 at 3–5. Federal courts thus disregard "bare assertions of collective responsibility, unsupported by concrete factual

allegations." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) (per curiam) (citation omitted).

Texas law supplies the elements of Plaintiff's claims. Texas recognizes three distinct product-defect theories: design, manufacturing, and marketing defects. Each has its own elements, and each must be plausibly pleaded on its own. Where a complaint bundles several theories in one count, the Court may dismiss the theories that are not adequately pleaded and leave the others.

## ARGUMENT

### A. The claims against ACS should be dismissed under Rules 12(b)(5) and 4(m) because Plaintiff did not timely serve ACS.

Plaintiff filed suit on June 8, 2026, so Rule 4(m) gave him until September 8, 2026 to serve ACS. Fed. R. Civ. P. 4(m), 6(a)(1)(C). He did not. On the last day of the service period, Plaintiff told the Court that ACS had not been served. Dkt. 20 at 2, 4. He did not ask the Court to extend his deadline. ACS was not served until October 4, 2026. Ex. A ¶ 3. That was 118 days after Plaintiff filed suit and 26 days after the deadline expired.

Plaintiff bears the burden of showing good cause, *Thrasher*, 709 F.3d at 511, and the record offers none. Plaintiff knew from the start whom he was suing. He alleges that he bought the holster "directly from" ACS through ACS's own online sales channel. Dkt. 1 ¶ 23. Yet he seemingly sued an incorrect company in Arkansas and let the service period run without seeking relief. *See id.* ¶ 10; Dkt. 4. ACS's statutory agent and address are publicly listed with the Ohio Secretary of

State. Mistake or inattention by counsel does not establish good cause. *Thrasher*, 709 F.3d at 511.

Because Plaintiff did not serve ACS within the time Rule 4(m) allows and cannot show good cause, the Court should dismiss Plaintiff's claims against ACS without prejudice. Fed. R. Civ. P. 4(m), 12(b)(5).

**B. Plaintiff fails to state a marketing-defect or negligent-warning claim against ACS.**

To state a marketing-defect claim, a plaintiff must plead facts showing, among other things, that "the absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product," and that "the failure to warn or instruct constituted a causative nexus in the product user's injury." *Hernandez v. Safariland, LLC*, 824 F. Supp. 3d 581, 593 (W.D. Tex. 2026) (citations omitted). A marketing-defect claim, and a negligence claim based on a failure to warn, both require a duty to warn. Whether a duty exists "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

Plaintiff's warning allegations against ACS fall into three groups: (1) warnings about the "well-documented risk" that SIG striker-fired pistols discharge without a trigger pull, Dkt. 1 ¶¶ 15, 23, 55(iii), 57, 67(c)–(d); (2) instructions on carrying a SIG pistol with a round chambered, *id.* ¶¶ 15, 23, 67(d); and (3) warnings about unidentified "features of the Subject Holster that might cause or contribute to such a discharge," *id.* ¶ 23. None states a claim.

### 1. ACS had no duty to warn about an alleged defect in SIG's pistol or to instruct on how to carry it.

The core of Plaintiff's warning theory is that ACS should have warned holster buyers that SIG's pistols can fire on their own. *See* Dkt. 1 ¶¶ 15, 55(iii), 57, 67(c)–(d). Texas law does not impose that duty on a holster maker. The Texas Supreme Court has held that "[a] manufacturer does not have a duty to warn or instruct about another manufacturer's products," even when the products are used together. *Barajas*, 927 S.W.2d at 616; *accord id.* at 614.

In *Barajas*, the court held that Firestone owed no duty to warn about a wheel that another company manufactured, even though Firestone had created the original design that the other manufacturer modified. *Id.* at 611, 616–17. The court relied on *Walton v. Harnischfeger*, in which the court of appeals held that a crane manufacturer "had no duty to warn or instruct users of its crane about rigging it did not manufacture, incorporate into its crane, or place into the stream of commerce." 796 S.W.2d 225, 228 (Tex. App.–San Antonio 1990, writ denied); *see Barajas*, 927 S.W.2d at 614, 616. Texas courts consistently have reaffirmed this principle, including where it is foreseeable that two manufacturers' products will be used together. *See Ranger Conv. & Supply Co. v. Davis*, 254 S.W.3d 471, 481–85 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (conveyor manufacturer had no duty to warn of dangers of the "larger bale-handling system" into which the conveyor was installed); *Johnson v. Jones-Blair Paint Co.*, 607 S.W.2d 305, 306 (Tex. Civ. App.–Eastland 1980, writ ref'd n.r.e.) (paint manufacturer had no duty to warn that dried paint should not be removed with

gasoline near an open flame because the paint was not, by itself, "unreasonably dangerous," and because the gasoline was manufactured and supplied by another entity).

The same rule applies here, and the case for it is stronger. The complaint does not allege that ACS designed, manufactured, distributed, or sold the P365, or that ACS supplied any component of it. It alleges the opposite. SIG designed and manufactured the pistol, Shoot Straight sold it, and the purported defect lies in SIG's internal fire-control design. Dkt. 1 ¶¶ 12–15, 19, 22, 30–31, 37. The only connection between ACS and the pistol is that Plaintiff carried it in ACS's holster. Under *Barajas* and *Walton*, that connection does not create a duty to warn about SIG's product. The same rule disposes of Plaintiff's contention that ACS gave no "safety instructions for carrying the Subject Handgun with a round chambered." *Id.* ¶ 15; *see id.* ¶¶ 23, 67(d). *Barajas* forecloses a duty to "warn *or instruct*" about another manufacturer's product. 927 S.W.2d at 616 (emphasis added).[4]

Plaintiff's own pleading confirms the point. He alleges that SIG knew of "numerous reports" of uncommanded discharges, refused to acknowledge them, and misled the public. Dkt. 1 ¶¶ 12, 42–43, 63. He pleads no fact suggesting that

---

4 In opposing SIG's motion, Plaintiff relied on *Orrson v. Sig Sauer, Inc.*, No. H-25-1776, 2026 WL 494129 (S.D. Tex. Feb. 23, 2026). *See* Dkt. 12 at 1, 12–14; Dkt. 17 at 1–4. *Orrson* does not reach ACS. The court there declined to dismiss a failure-to-warn claim against a pistol manufacturer, reasoning that the "precise question" was whether the manufacturer "adequately warned that the gun's allegedly flawed design meant that it was more likely to spontaneously discharge than an ordinary pistol." 2026 WL 494129, at *5. That question concerns what a manufacturer must disclose about its <u>*own*</u> product.

ACS—a holster maker—knew or had reason to know what SIG allegedly concealed. His allegation that ACS "knew, or in the exercise of ordinary care should have known," of "the known propensity of the P365[] to discharge without a trigger pull" is a bare recital of an element. *Id.* ¶ 57; *see Iqbal*, 556 U.S. at 678. Because no duty exists as a matter of law, the SIG-related warning and instruction theories against ACS should be dismissed with prejudice.

**2. Plaintiff pleads no facts supporting a warning claim about the holster itself.**

What remains is Plaintiff's allegation that ACS gave no warnings "regarding any features of the Subject Holster that might cause or contribute to such a discharge." Dkt. 1 ¶ 23. That allegation does not identify any such "feature." It does not allege what risk the holster itself presented, what ACS knew or should have known about that risk, what warning should have been given, or how a warning about the holster would have prevented a discharge that Plaintiff says occurred with nothing touching the trigger. *See id.* ¶¶ 11, 25. A claim that a product "might" have unidentified features that "might" contribute to an injury is speculation, not a plausible claim. *See Twombly*, 550 U.S. at 555 (factual allegations "must be enough to raise a right to relief above the speculative level").

Plaintiff's holster-specific allegations also plead a design theory, not a marketing defect. A plaintiff may plead design and marketing defects in the alternative, but to do so he must "articulate a plausible theory that the product was designed safely but rendered unsafe by the failure to warn." *Hernandez*, 824 F. Supp. 3d at 594. In *Hernandez*, a police officer alleged that her keys entered an

opening near the trigger guard of a Safariland retention holster and discharged her pistol. *Id.* at 587–88. The court allowed her design-defect claim to proceed. *Id.* at 590–93. But it dismissed her strict-liability and negligent marketing-defect claims because she never alleged "that the holster was safe as designed yet the failure to warn caused the holster to be unreasonably dangerous." *Id.* at 594–95. Even the added allegations in her proposed amended complaint, including two earlier discharges she attributed to the same holster defect, "allege[d] nothing more than a design defect." *Id.* at 594.

Plaintiff's complaint has the same flaw. Paragraph 55(i) and (ii) criticize how the holster is designed: it supposedly "failed to provide adequate protection" of the trigger guard, and its "material, construction, or fit permitted contact with" the trigger. Dkt. 1 ¶ 55(i)–(ii). Paragraph 55(iii) then adds, "and/or," that the holster lacked warnings. *Id.* ¶ 55(iii). Plaintiff never alleges that the holster was safe as designed but made unreasonably dangerous by the absence of a warning.

The complaint also fails to plead the causal element of a marketing-defect claim. *See Hernandez*, 824 F. Supp. 3d at 593. The only allegation about what a warning would have changed concerns warnings from SIG. Dkt. 1 ¶ 44. Plaintiff never alleges that any warning from ACS would have led him to act differently. By contrast, the plaintiff in *Orrson* alleged that, had the pistol maker adequately warned him, "he would not have purchased/carried the firearm." 2026 WL 494129, at *5.

### 3. Plaintiff's "misleading marketing campaign" allegation includes no well-pleaded facts as to ACS.

Plaintiff alleges that "Shoot Straight and ACS further promoted SIG's misleading marketing campaign and/or failed to adequately warn the public of the known risks associated with the P365." Dkt. 1 ¶ 64. Plaintiff identifies no advertisement, statement, or promotion by ACS, and no "campaign" ACS took part in. The allegation is pleaded against two defendants at once and in the alternative. It is the kind of collective, "and/or" allegation that does not tell the Court what any one defendant did. *See Martinez*, 846 F. App'x at 243; *Callier,* 2021 WL 5393829, at *4; *see also* Dkt. 26 at 3–5.[5] To the extent Plaintiff's negligence count rests on it, that theory should be dismissed as well.

For these reasons, the Court should dismiss Plaintiff's strict-liability marketing-defect claim against ACS (Dkt. 1 ¶¶ 55(iii), 57, 59) and his negligence claim against ACS to the extent it rests on a failure to warn, a failure to instruct, or marketing (*id.* ¶¶ 64, 67(c)–(d)).

## C. Plaintiff fails to state a manufacturing-defect claim against ACS.

"[A] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Casey v. Toyota Motor Eng'g & Mfg. N.*

---

5 Judge Edison's analysis in Dkt. 26 concerned personal jurisdiction. Its reasoning applies with equal force here: liability, like jurisdiction, must be assessed defendant by defendant, and an allegation that "Defendants" did one thing "and/or" another does not tell the Court what any one of them did.

*Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014) (quoting *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006)). A plaintiff must identify a specific defect, and "a product failure or malfunction, standing alone," is not "sufficient proof of a product defect." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007); *see Casey*, 770 F.3d at 326. At the pleading stage, a complaint that "does not specify the manufacturing defect" is "impermissibly conclusory." *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011). Courts in this Circuit dismiss manufacturing-defect claims where the plaintiff does not "describe the features of the [product] that fail to meet manufacturing specifications." *Williams v. Gen. Binding Corp.*, No. 3:23-CV-00850-K, 2024 WL 628850, at *3 (N.D. Tex. Feb. 14, 2024) (dismissing claim where plaintiff "ha[d] not explained what error in the manufacturing" made the product defective); *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 766–67 (W.D. Tex. 2020) (dismissing claim where plaintiff did not allege that "a particular mishap occurred during the manufacturing process" or that the product otherwise deviated from specifications or planned output); *see* Dkt. 7 at 22–24 (collecting cases).

Plaintiff's manufacturing-defect allegation against ACS consists of the words "defectively manufactured," joined to design and marketing theories by "and/or." Dkt. 1 ¶ 55. He identifies no specification, no planned output, and no way in which his holster differed from any other holster of the same model. He alleges only that the holster "reached Mr. Harbison without substantial change in its condition" and that ACS's "defects in design, manufacturing, and/or

marketing" were a producing cause. *Id.* ¶¶ 58–59. Those are elements, not facts. *See Iqbal*, 556 U.S. at 678.

The two holster-specific items in paragraph 55 do not fill the gap. That the holster "failed to provide adequate protection" of the trigger guard, and that its "material, construction, or fit permitted contact with" the trigger, *id.* ¶ 55(i)–(ii), are criticisms of how this model of holster is designed. They do not describe a flaw in this one unit. A design criticism relabeled as a manufacturing defect does not state a manufacturing-defect claim. *See Casey*, 770 F.3d at 326.

Two further features of the complaint make the manufacturing theory implausible as to ACS. First, Plaintiff pleads it "[u]pon information and belief." Dkt. 1 ¶ 55. That form of pleading is justified when the facts are "peculiarly within the possession and control of the defendant." *Innova*, 892 F.3d at 730. The opposite is true here. Plaintiff bought the holster and has it. *See* Dkt. 1 ¶¶ 23–24. Whatever argument Plaintiff may make that the internal parts of SIG's pistol are beyond his inspection, *see* Dkt. 12 at 11–12, the holster is a molded shell with nothing hidden inside it. Plaintiff's reliance on *Orrson* for a more lenient standard does not help him here. *See* Dkt. 12 at 11–12. The defendant in *Orrson* did not move to dismiss the manufacturing-defect claim, so the court did not address one. 2026 WL 494129, at *4 n.2. The footnote Plaintiff quotes addressed allegedly contradictory theories of *design* defect. *Id.* at *4 n.3. And the statement Plaintiff cites from the *Orrson* defendant, about what an inspection of a pistol's internal mechanism might reveal, *id.* at *2, has no counterpart for a holster that

Plaintiff already has in hand. Plaintiff does not allege that it broke, cracked, deformed, or did anything at all.

Second, Plaintiff's own theory is that the pistol fired without anything touching the trigger because of defects in SIG's internal components. Dkt. 1 ¶¶ 11, 14, 19, 25. On those allegations, the inference that a manufacturing flaw in the holster caused the discharge is not plausible.

The Court should dismiss Plaintiff's strict-liability manufacturing-defect claim against ACS, together with his negligence claim to the extent it rests on negligent manufacturing. Dkt. 1 ¶¶ 55, 58–59, 67(a).

### D. Plaintiff fails to state a claim for gross negligence or exemplary damages against ACS.

Texas defines gross negligence as an act or omission that, "when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others," and "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. Code § 41.001(11). Exemplary damages may be awarded only on clear and convincing proof that the harm resulted from fraud, malice, or gross negligence. *Id.* § 41.003(a)–(b). Where there are multiple defendants, "an award of exemplary damages must be specific as to a defendant." *Id.* § 41.006. Plaintiff's allegations against ACS fail for three reasons.

**First, the allegations are group-pleaded.** Plaintiff does not allege gross negligence by ACS. He alleges that "Defendants" collectively "had actual subjective awareness" of an extreme risk and nevertheless put "fatally defective firearms and accessories into the stream of commerce." Dkt. 1 ¶ 70; *see id.* ¶ 73. Gross negligence turns on the defendant's own subjective state of mind, and Texas law requires any exemplary-damages award to be specific to each defendant. Tex. Civ. Prac. & Rem. Code §§ 41.001(11)(B), 41.006. An allegation that a gun manufacturer, a Florida retailer, and a holster maker all shared the same awareness, without a single fact about any one of them, does not plausibly allege what ACS knew. Judge Edison already has declined to credit this kind of pleading in this case. Dkt. 26 at 3–5.

**Second, the allegations are a formulaic recital of the statute.** Paragraph 73 tracks the statutory definition nearly word for word. *Compare* Dkt. 1 ¶ 73, *with* Tex. Civ. Prac. & Rem. Code § 41.001(11). That is the "formulaic recitation of the elements" that *Twombly* holds insufficient. 550 U.S. at 555. Courts applying Texas law dismiss gross-negligence allegations of this kind. *See Williams*, 2024 WL 628850, at *5 (holding that a "recitation of legal conclusions is insufficient to plead gross negligence" where the plaintiff alleged "no facts supporting her characterization of the risk as extreme except her own injury"); Dkt. 7 at 27–28 (collecting cases).

**Third, every fact Plaintiff pleads about knowledge concerns SIG.** Plaintiff alleges "numerous reports of Sig Sauer pistols discharging without a

trigger pull," a history involving the "notorious SIG P320," and SIG's refusal "to acknowledge or remedy these defects." Dkt. 1 ¶ 12; *see id.* ¶¶ 42–43, 63. In defending his gross-negligence claim against SIG, Plaintiff relied on exactly those allegations. Dkt. 12 at 14; Dkt. 17 at 3–4. None of them concerns ACS. *Orrson* illustrates the difference. The court there allowed a gross-negligence claim to proceed against the pistol maker because the complaint alleged that it "knew of numerous instances in which these guns unexpectedly discharged" and "continued to sell the guns despite knowledge of the design flaws." 2026 WL 494129, at *7.[6] The complaint does not allege that ACS received any report, complaint, or notice of any discharge involving its holsters or anyone else's, or that ACS knew of any risk and chose to disregard it. Without facts showing ACS's actual, subjective awareness of an extreme risk, Plaintiff has not stated a claim for gross negligence against ACS. And to the extent the gross-negligence claim depends on the warning and manufacturing theories addressed above, it fails with them.

---

[6] In *Hernandez*, the court allowed a gross-negligence claim against a holster maker to proceed. 824 F. Supp. 3d at 598. But the holster maker's only argument there was that no underlying negligence claim survived, and the court rejected it because the design-defect claims survived. *Id.* The court did not consider whether the plaintiff had pleaded facts showing the holster maker's actual, subjective awareness of an extreme risk, which is the question ACS presents here.

The Court should dismiss Plaintiff's gross-negligence claim against ACS and his request for exemplary damages against ACS. Dkt. 1 ¶¶ 70, 72(q), 73.[7]

## CONCLUSION AND PRAYER

ACS asks the Court to dismiss all of Plaintiff's claims against ACS without prejudice under Rules 4(m) and 12(b)(5). In the alternative, ACS asks the Court to dismiss the following claims against ACS under Rule 12(b)(6):

(1) the strict-liability marketing-defect claim and the negligence claim to the extent based on failure to warn, failure to instruct, or marketing (Dkt. 1 ¶¶ 55(iii), 57, 64, 67(c)–(d)), with prejudice as to any theory that ACS had a duty to warn or instruct about SIG's pistol;

(2) the strict-liability manufacturing-defect claim and the negligence claim to the extent based on manufacturing (*id.* ¶¶ 55, 58–59, 67(a)); and

(3) the gross-negligence claim and the request for exemplary damages (*id.* ¶¶ 70, 72(q), 73).

ACS also asks for all other relief to which it is entitled.

Dated: October 19, 2026

---

7 Some courts describe exemplary damages as a remedy rather than an independent cause of action. Either way, the result is the same. Exemplary damages are available against ACS only on clear and convincing proof of ACS's own gross negligence, Tex. Civ. Prac. & Rem. Code § 41.003(a)–(b), and an award must be "specific as to a defendant," *id.* § 41.006. Where no plausible claim of gross negligence is pleaded against ACS, the request for exemplary damages against ACS should be dismissed with it.

Respectfully submitted,

*/s/ J. Andrew Hutton*

John Andrew Hutton
Attorney-in-Charge
State Bar No. 24012878
Southern District ID No. 26762
GORDON REES SCULLY MANSUKHANI LLP
2705 Bee Caves Road, Suite 220
Austin, Texas 78746
Telephone: (512) 391-0197
Facsimile: (512) 391-0183
Email: ahutton@grsm.com

**COUNSEL FOR DEFENDANT AMERICAN CONCEALMENT SOLUTIONS, LLC**

## CERTIFICATE OF SERVICE

I certify that on October 19, 2026, I filed the foregoing document with the Clerk of Court of the United States District Court for the Southern District of Texas through the Court's CM/ECF system, which will send notice of the filing to the following counsel of record.

Cesar Tavares
Alma J. Reyes
Aljejandro Salicrup
WILLIAMS HART & BOUNDAS, LLP
8441 Gulf Frwy, Suite 600
Houston, Texas 77017-5001
TavaresLitTeam@whlaw.com
*Attorneys for Plaintiff*

Robert T. Rice
THE RICE LAW FIRM
116 South Velasco Street, Suite D
Angleton, Texas 77515
ribert@ricelawoffice.com
attorneyrice@aol.com
eservice@ricelawoffice.com
*Attorneys for Plaintiff*

Colin L. Powell
Homero Perez Franco, III
HARTLINE BARGER LLP
8750 North Central Expy, Suite 1600
Dallas, Texas 75231
cpowell@hartlinebarger.com
hperez-franco@hartlinebarger.com
*Attorneys for Defendant Shoot Straight, Inc.*

H. Scott Alexander
CLARK HILL, PLC
2615 Calder Avenue, Suite 240
Beaumont, Texas 77702
hsalexander@clarkhill.com
*Attorney for Defendant Sig Sauer Inc.*

Kristen Dennison
Kara S. Graham
LITTLETON JOYCE UGHETTA & KELLY LLP
2460 N. Courtenay Plkwy, Suite 204
Merritt Island, Florida 32953
kara.graham@littletonjoyce.com
kristen.dennison@littletonjoyce.com
*Attorneys for Defendant Sig Sauer Inc.*

Ryan Erdreich
PISCIOTTI LALLIS ERDRIEICH
30A Vreeland Road, Suite 300
Florham Park, New Jersey 07932
rerdreich@pisciotti.com
*Attorney for Defendant Shoot Straight, Inc.*

*/s/ J. Andrew Hutton*
John Andrew Hutton